COURT OF CHANCERY
OF THE
STATE OF DELAWARE

ANDRE G. BOUCHARD
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: February 11, 2021
Date Decided: April 14, 2021

Jeremy D. Eicher, Esquire
Eicher Law LLC
1007 North Orange Street, 4th Floor
Wilmington, DE 19801

Jennifer C. Voss, Esquire
Skadden, Arps, Slate, Meagher & Flom LLP
920 North King Street, 7th Floor
Wilmington, DE 19801

Frank E. Noyes, II, Esquire
Offit Kurman, P.A.
1201 N. Orange Suite, Suite 10E
Wilmington, DE 19801

Kevin R. Shannon, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE 19801

David E. Ross, Esquire
Ross Aronstam & Moritz LLP
100 S. West Street, Suite 400
Wilmington, DE 19801

> RE:  *In re: TransPerfect Global, Inc.*
> Civil Action No. 9700-CB
>
> *Elizabeth Elting v. Philip R. Shawe, et al.*
> Civil Action No. 10449-CB

Dear Counsel:

This letter constitutes the court's decision on the motion of intervenors Ross Aronstam & Moritz LLP ("RAM") and Garrett B. Moritz (together "Intervenors") to enforce certain orders of this court and for civil contempt and sanctions (the "Motion") against Philip R. Shawe and TransPerfect Global, Inc. ("TransPerfect" or "TPG" or the "Company").  For the reasons explained below, although the court

finds that TransPerfect violated the plain terms of an exclusive jurisdiction provision in an order of this court by filing an action in New York state court against Intervenors that implicates the actions and decisions of a custodian this court appointed pursuant to its statutory authority under 8 *Del. C.* § 226, the Motion will be denied based on actions the Company took in response to the filing of the Motion to mitigate its non-compliance.

## I.    Background

The factual and procedural background of these actions are discussed extensively in numerous opinions of this court and the Delaware Supreme Court. This decision recites only those facts directly relevant to the pending motion.

RAM is a law firm based in Wilmington, Delaware and Garrett B. Moritz is a partner at RAM.  TransPerfect Global, Inc. provides translation, website localization, and litigation support services.  Since May 7, 2018, Philip R. Shawe ("Shawe") and his mother, Shirley Shawe ("Ms. Shawe") have controlled 99% and 1%, respectively, of the Company's outstanding shares.  This decision refers to the Company and Shawe together, at times, as "Respondents."

### A.    The Sale Order

On May 23, 2014, Elizabeth Elting filed the first of these actions seeking the appointment of a custodian to dissolve the Company because of deadlocks between

its co-founders (Elting and Shawe) that threatened the Company with irreparable injury. At the time, the shares of the Company were held by Elting (50%), Shawe (49%), and Ms. Shawe (1%). On August 13, 2015, for the reasons explained in a post-trial opinion of the same date, the court entered an order appointing Robert B. Pincus as a custodian of the Company (the "Custodian") to oversee a judicially ordered sale of the Company under 8 *Del. C.* § 226 with a dual mandate: "to sell the Company with a view toward maintaining the business as a going concern and maximizing value for the stockholders."[1]

On July 18, 2016, the court entered an order implementing a proposed plan to sell the Company through a "modified auction" (the "Sale Order").[2] Paragraph 7 of the Sale Order states "[t]he Custodian is authorized to retain, in the name of the Company, one or more consultants or advisors, including financial advisors, accountants, attorneys, brokers and other professionals, as the Custodian, in his sole discretion, deems appropriate for purposes of carrying out the Modified Auction or a Sale Transaction."[3] Paragraph 15 of the Sale Order provides that this

---

[1] *In re Shawe & Elting LLC*, 2015 WL 4874733, at *32 (Del. Ch. Aug. 13, 2015), *aff'd sub nom. Shawe v. Elting*, 157 A.3d 152 (Del. 2017).

[2] Dkt. 848. Unless otherwise noted, docket references come from C.A. No. 9700-CB.

[3] *Id.* ¶ 7.

court has exclusive jurisdiction over any challenge of the parties to "any action, recommendation or decision by the Custodian."[4]

On February 13, 2017, the Delaware Supreme Court affirmed the August 2015 opinion, its implementing order, and the Sale Order.[5] Shortly thereafter, the Custodian began to develop a plan of sale.

### B. The Section 211 and 220 Actions

On April 20, 2017, Ms. Shawe filed an action in this court "asserting a single claim under 8 *Del. C.* § 211(c) to compel TPG to hold an annual meeting of its stockholders" (the "Section 211 Action").[6] On April 26, 2017, the Custodian— exercising his authority under paragraph 7 of the Sale Order—retained RAM to represent the Company in the Section 211 Action.[7]

Before filing the Section 211 Action, Ms. Shawe made a proposal to break the deadlocks between Elting and her son that included granting a limited proxy to Elting, but she placed a series of significant conditions on the proposal that were

---

[4] *Id.* ¶ 15.

[5] *Shawe v. Elting*, 157 A.3d 152 (Del. 2017).

[6] *In re TransPerfect Glob., Inc.*, 2017 WL 3499921, at *2 (Del. Ch. Aug. 4, 2017).

[7] *See* Dkt. 1539 Ex. C.

not acceptable to Elting and made the proposal a non-starter.[8]  On June 2, 2017, after hearing argument on Ms. Shawe's motion to expedite the Section 211 Action and Elting's cross-motion to enforce the Sale Order, the court ordered the parties to engage in mediation with former Chancellor Chandler and held the motions in abeyance.[9]

On August 4, 2017, after the mediation failed, the court found that "the clear and admitted objective of the Section 211 Action is to remove the Custodian and to end the sale process, which is inconsistent with the Sale Order's directive to 'cooperate fully with the Custodian' and to not 'impede[] or undermine[], or intend[] to impede or undermine, the sale process.'"[10]  The court then denied Ms. Shawe's motion for expedition, reasoning as follows:

---

[8] The conditions of Ms. Shawe's proposal included the (i) "adoption of an amendment to TPG's bylaws restructuring the Board to consist of five directors serving staggered terms, and authorizing a majority of the members of the Board to fill any vacancies that may exist from time to time;" (ii) "adoption of certain guidelines for significant corporate governance issues, including that any sitting director up for re-election at the next annual meeting must submit a contingent resignation that becomes effective only if the director fails to receive a sufficient number of votes for re-election and the Board accepts the resignation;" (iii) "issuance of the remaining authorized shares of the Company to each of the current stockholders on a pro rata basis according to their current ownership interests;" and (iv) "provision of a proxy allowing Elting to vote Ms. Shawe's shares solely for the election of any directors of TPG at the next five annual meetings of the stockholders." *In re TransPerfect Glob., Inc.*, 2017 WL 3499921, at *2.

[9] *Id.* at *1.

[10] *Id.* at *4 (alterations in original) (quoting Sale Order ¶ 12).

> In view of the specific and unique circumstances of this case, where the sale process that was set in motion *almost two years ago* is expected to conclude in the near future, it is my opinion that TPG should not be required to respond to the Section 211 Action at this stage. Ms. Shawe explicitly states that she "has not commenced [the Section 211] proceeding merely to enforce a technical corporate statutory right. Rather, . . . Ms. Shawe intends to end the division of the stockholders that led to the 2014 Stipulation." But Ms. Shawe also has steadfastly insisted on conditioning her grant of a proxy to Elting on conditions that Elting already has rejected. Thus, even if a stockholder meeting were ordered, no proxy would be granted, no deadlock would be broken, and no director would be elected. It would be a futile exercise.[11]

On August 7, 2017, three days after the court's ruling in the Section 211 Action, Ms. Shawe requested certain "itemized billing records" from the Custodian.[12] On September 12, 2017, Ms. Shawe served a demand under 8 *Del. C.* § 220 to inspect books and records of the Company in order to "evaluate the propriety of the amounts included in recent invoices from the Custodian and his advisors to be paid by the Company, pursuant to" the Sale Order.[13] On September 15, 2017, the Custodian—again exercising his authority under paragraph 7 of the Sale Order—retained RAM to represent the Company with respect to the Section 220 demand.[14]

---

[11] *Id.* at *5 (alterations in original) (internal citations omitted).

[12] *Shawe v. TransPerfect Glob., Inc.*, C.A. No. 2017-0697-AGB, Dkt. 1 Ex. 5 at 3.

[13] *Id.*, Dkt. 1 Ex. 9 at 1.

[14] Dkt. 1539 Ex. F.

On September 19, 2017, RAM sent a letter to Ms. Shawe's counsel on behalf of the Company refusing the demand.[15] On October 1, 2017, Ms. Shawe sued the Company to enforce her inspection demand (the "Section 220 Action").[16] On October 24, 2017, the Company filed its answer to Ms. Shawe's complaint.[17]

On November 19, 2017, the sale process concluded with Shawe entering a Securities Purchase Agreement ("SPA") to purchase Elting's shares of the Company. Three days later, the court entered an order staying all proceedings in the Section 220 Action at the joint request of the parties.[18] Except for the filing of pleadings, there was no substantive activity in the Section 220 Action.

## C. The Final Order

On February 15, 2018, for the reasons stated in a memorandum opinion issued on the same date,[19] the court approved the SPA (the "Final Order").[20] Paragraph 8 of the Final Order provides that "[t]he rights and authority granted to the Custodian and the duties and responsibilities of all parties to the Actions under

---

[15] Dkt. 1539 Ex. G.

[16] *Shawe v. TransPerfect Glob., Inc.,* C.A. No. 2017-0697-AGB.

[17] *Id.*, Dkt. 3.

[18] *Id.*, Dkt. 6.

[19] *In re TransPerfect Glob., Inc.*, 2018 WL 904160 (Del. Ch. Feb. 15, 2018), *aff'd sub nom. Elting v. Shawe*, 185 A.3d 694 (Del. 2018) (TABLE).

[20] Dkt. 1243.

the Sale Order . . . shall remain in full force and effect in accordance with their terms."[21]  Paragraph 10 of the Final Order provides, in part, that the Court of Chancery "retains continuing and exclusive jurisdiction over the parties to the Actions for all matters relating to the Actions."[22]

On May 3, 2018, in response to an appeal Elting took challenging the sale of her TPG shares to Shawe under the SPA, the Delaware Supreme Court affirmed the Final Order.[23]  On May 7, 2018, the sale transaction closed.  On May 9, 2018, Ms. Shawe stipulated to the dismissal of the Section 211 and 220 Actions.[24]

### D.     The New York Action

On August 18, 2020, TransPerfect sued the Intervenors in the Supreme Court of New York (the "New York Action"), asserting claims for "professional negligence" and breaches of fiduciary duty.[25]  More specifically, the New York Action alleges that Intervenors "recklessly or willfully followed the custodian's instructions, which were directly contrary to the interests of TransPerfect and solely operated to the benefit of the custodian" and "continued to collect tens of

---

[21] *Id.* ¶ 8.

[22] *Id.* ¶ 10.

[23] *Elting v. Shawe*, 185 A.3d 694 (Del. 2018) (TABLE).

[24] *Shawe v. TransPerfect Glob., Inc.*, C.A. No. 2017-0306-AGB, Dkt. 37; *Shawe v. TransPerfect Glob., Inc.*, C.A. No. 2017-0697-AGB, Dkt. 9.

thousands of dollars in fees from TransPerfect while aiding and abetting a person with interests directly adverse to their client"—namely, the Custodian.[26]

### E. The Intervention Motion and Subsequent Events

On October 19, 2020, RAM and Moritz filed a motion to intervene in this action "for the limited purpose of filing a motion for contempt against" Shawe and TPG.[27] The court granted the motion to intervene on December 16, 2020.[28] The same day, the Intervenors filed the pending Motion, asserting that the New York Action "violates multiple provisions of the Sale Order and the Final Order"[29] and that the Company and Shawe should "face a *per diem* monetary sanction" of $30,000 "if the New York Action is not promptly dismissed."[30]

On January 11, 2021, two weeks before its response to the Motion was due, the Company amended its complaint in the New York Action. In its opposition to the Motion, the Company represents it "has voluntarily withdrawn all equitable claims, and is proceeding solely with legal claims for damages."[31]

---

[25] Dkt. 1539 Ex. A ¶¶ 1, 103, 110.

[26] *Id.* ¶¶ 9, 10.

[27] Dkt. 1511 at 1.

[28] Dkt. 1538.

[29] Dkt. 1539 ¶ 42.

[30] *Id.* ¶¶ 80, 88.

[31] Dkt. 1569 at 10 n.2 & Ex. C (Amended Complaint).

On January 25, 2021, simultaneous with filing its opposition to the Motion, the Company filed an action in this court against RAM and Moritz that mirrors its amended complaint in the New York Action (the "Delaware Malpractice Action").[32]  On January 29, 2021, the New York court approved a stipulation staying that action "until thirty (30) days following the earlier of: (i) the issuance of written notice by either party to resume proceedings . . . or (ii) the issuance by a court of competent jurisdiction in Delaware of a final non-appealable decision, order or judgment regarding the pending Motion."[33]

On March 26, 2021, the Company filed a motion to dismiss the Delaware Malpractice Action it filed against Intervenors "for lack of subject matter jurisdiction and improper venue pursuant to Court of Chancery Rules 12(b)(1) and 12(b)(3)."[34]  On March 31, 2021, RAM and Moritz moved to dismiss the Delaware Malpractice Action under Court of Chancery Rule 12(b)(6).[35]

---

[32] *TransPerfect Glob., Inc. v. Ross, Aronstam & Moritz, LLP et al.*, C.A. No. 2021-0065-AGB.

[33] Dkt. 1572.

[34] *TransPerfect Glob., Inc. v. Ross, Aronstam & Moritz, LLP et al.*, C.A. No. 2021-0065-AGB, Dkt. 7.

[35] *Id.*, Dkt. 8.

## II.    Analysis

Court of Chancery Rule 70(b) expressly authorizes the Court to find a party in contempt for the party's "failure . . . to obey or to perform any order."[36] Determining whether a party should be held in contempt "is addressed to the discretion of this Court."[37]  The "party petitioning for a finding of contempt bears the burden to show contempt by clear and convincing evidence."[38]  "To be held in contempt, a party must be bound by an order, have notice of it, and nevertheless violate it."[39]  "A cardinal requirement for any adjudication of contempt is that the order allegedly violated give clear notice of the conduct being proscribed."[40]  The violation "must not be a mere technical one, but must constitute a failure to obey the Court in a meaningful way."[41]

In the Motion, Intervenors argue that by bringing the New York Action, TPG and Shawe violated four provisions of this court's orders that fall into two

---

[36] Ch. Ct. R. 70(b).

[37] *Dickerson v. Castle*, 1991 WL 208467, at *3 (Del. Ch. Oct. 15, 1991).

[38] *Trascent Mgmt. Consulting, LLC v. Bouri*, 2018 WL 6338996, at *1 (Del. Ch. Dec. 4, 2018).

[39] *Aveta Inc. v. Bengoa*, 986 A.2d 1166, 1181 (Del. Ch. 2009).

[40] *Mother African Union First Colored Methodist Protestant Church v. Conf. of African Union First Colored Methodist Protestant Church*, 1992 WL 83518, at *9 (Del. Ch. Apr. 22, 1992) (internal quotation omitted), *aff'd*, 633 A.2d 369 (Del. 1993) (TABLE).

[41]  *Dickerson,* 1991 WL 208467, at *4 (internal quotation marks omitted).

categories. The first category concerns a release of claims and a bar order in the

Final Order. The second category concerns exclusive jurisdiction provisions in the

Sale Order and the Final Order. The court will address these provisions in turn.

## A. The Release and Bar Provisions in the Final Order

Paragraph 3(b) of the Final Order contains a release of claims and a

covenant not to sue. It states, in relevant part, that:

> Effective upon the Closing, each of Parent **[Shawe]**, Buyer, each of Buyer's present or future members, Shirley Shawe **and his**, its and her (as applicable) respective **agents**, heirs, executors, family members, spouses, administrators, estate, beneficiaries, assigns, advisors and representatives (**the "Buyer Releasors"**) does, to the fullest extent permitted by Law, **hereby knowingly waive, fully release and forever discharge and covenant not to sue**, directly or indirectly or on behalf of any Person (including through any derivative action), the Seller, **the Company**, the Company Subsidiaries, the Custodian, his advisors, . . . **and** all of **their** respective **past** and present **agents, . . . representatives, [and] attorneys**, . . . (the "Buyer Released Parties") . . . **from** and with respect to any and **all Claims which the Buyer Releasors ever had,** now have or which they hereinafter can have, shall or may have by reason of any matter, cause or thing whatsoever in connection with, arising out of, based upon or related to . . . any . . . matter whatsoever **arising out of or related to . . . the Sale Order and any matters contemplated thereby**.[42]

---

[42] Dkt. 1243 ¶ 3(b) (emphasis added). This provision restates Section 8.2(b) of the SPA, which defines (i) "Parent" as Philip R. Shawe, (ii) "Buyer" as PRS Capital LLC, a New York limited liability company of which Shawe was the sole and managing member, *TransPerfect*, 2018 WL 904160, at \*12, and (iii) "Seller" as Elizabeth Elting. *See* Dkt. 1185 Ann. C § 1.1.

Intervenors contend that Shawe and TPG should be held in contempt for violating paragraph 3(b) because the claims asserted in the New York Action were released under this provision.

To be more specific, Intervenors contend that (i) TransPerfect, as an "agent" of Shawe, is a "Buyer Releasor," (ii) RAM and Moritz, as past "agents," "representatives" and/or "attorneys" of the Company are "Buyer Released Parties," and (iii) the claims in the New York Action fall within the scope of the release because they are claims the Buyer Releasors had that arise out of and relate to "the Sale Order and any matters contemplated thereby."[43]   In my view, Intervenors' argument cannot support a finding of contempt for two reasons, both of which relate to Intervenors' contention that TransPerfect is a "Buyer Releasor."

First, TransPerfect—which is the only plaintiff in the New York Action— did not have clear notice that it was bound by paragraph 3(b) of the Final Order. This is because paragraph 3(b) does not list TransPerfect by name as a Buyer Releasor and it is not obvious from the plain terms of the release provision how the Company would be an "agent" of Shawe to be a Buyer Releasor, which, as Intervenors admit, is "the only way" paragraph 3(b) binds TransPerfect.[44]

---

[43] Dkt. 1539 ¶¶ 44-52.

[44] Oral Arg. Tr. at 51 (Feb. 11, 2021) (Dkt. 1580); *see also* Dkt. 1539 at 19 n.5.

In support of their agency theory, Intervenors rely on cases where a corporate entity was prohibited "from using another entity, whether a corporation or another form of business entity" to "circumvent the purpose" of an agreement[45] and where an order binding a corporate entity was found to be "identical to an order issued to its officers" because "incorporeal abstractions act through agents."[46] Intervenors, however, have cited no legal authority where a corporate entity was found to be the agent of a natural person. Without ruling on that matter, the lack of any supporting authority on the issue creates doubt over Intervenors' interpretation of paragraph 3(b) and undermines their contention that Shawe and TransPerfect had "clear notice" that the New York Action would violate paragraph 3(b) of the Final Order.

Second, Intervenors' argument that Shawe caused TransPerfect as his agent to assert released claims in the New York Action implicates a question of fact.

---

[45] *Preferred Inv. Servs., Inc. v. T & H Bail Bonds, Inc.*, 2013 WL 3934992, at *16 (Del. Ch. July 24, 2013), *aff'd sub nom. Preferred Inv. Servs., Inc. v. T & H Bail Bond, Inc.*, 108 A.3d 1225 (Del. 2015)); *see also Neuravana Med., LLC v. Balt USA, LLC*, 2019 WL 4464268, at *8-9 (Del. Ch. Sept. 18, 2019) (discussing when a subsidiary is an agent of a parent corporation under the agency theory of personal jurisdiction), *reargument denied*, 2019 WL 5092894 (Del. Ch. Oct. 10, 2019).

[46] *Deutsch v. ZST Digit. Networks, Inc.*, 2018 WL 3005822, at *10 (Del. Ch. June 14, 2018) (quoting *Reich v. Sea Sprite Boat Co., Inc.*, 50 F.3d 413, 417 (7th Cir. 1995) (Easterbrook, J.)).

Although it is indisputable that Shawe controls the Company through his 99% ownership of the Company, and although it is hard to imagine given the history of these proceedings that Shawe did not direct the Company to file the New York Action, there is no record before the court that he *actually* did so. Without clear and convincing evidence that Shawe in fact caused TransPerfect to file the New York Action, the court cannot find that the Company acted as his "agent," even assuming it is legally possible for an entity to serve as the agent of a natural person.

Intervenors also contend that the filing of the New York Action violated paragraph 5(b) of the Final Order. That provisions states, in relevant part, that:

> **[Shawe], Buyer, each of Buyer's present or future members and managers, Shirley Shawe and his, its and her (as applicable) respective agents, heirs, executors, family members, spouses, administrators, estate, beneficiaries, assigns, advisors and representatives** shall be deemed, by operation of law and of this Order, and only to the extent permitted by applicable law, to have covenanted not to sue any of the Buyer Released Parties with respect to the Released Claims as defined in Paragraph 3(b) of this Order, and shall, only to the extent permitted by applicable law, be forever BARRED, ENJOINED and RESTRAINED by operation of this Order from initiating or pursuing, or causing or acting in concert with any other person or entity to initiate or pursue, any claim, action, suit or proceeding of any nature whatsoever . . . relating to the released Claims as defined in Paragraph 3(b) of this Order . . . .[47]

---

[47] Dkt. 1243 ¶ 5(b) (emphasis added).

Importantly, as the text bolded above shows, the universe of persons barred from "initiating or pursuing . . . released Claims" in paragraph 5(b) tracks the definition of "Buyer Releasors" in paragraph 3(b) of the Final Order. Intervenors' reliance on this aspect of the bar order thus suffers from the same deficiencies as their reliance on the release in paragraph 3(b).

To be more specific, to conclude that the initiation or pursuit of the New York Action violated paragraph 5(b), the court would have to find that (i) TransPerfect was acting as an agent of Shawe when it filed the New York Action and (ii) that Shawe in fact caused TransPerfect to file the New York Action. For the reasons discussed above, the first issue implicates a legal issue for which no supporting authority has been provided, which negates TransPerfect having "clear notice" that its filing of the New York Action would violate paragraph 5(b), and the second issue implicates a question of fact for which there is no record.

Paragraph 5(b) also bars a person falling within the definition of "Buyer Releasor" from "causing or acting in concert with any other person or entity to initiate or pursue, any claim . . . relating to the released Claims as defined in Paragraph 3(b)."[48] Intervenors mentioned but devoted little attention to this aspect of the bar order. As with the Intervenor's agency theory, however, demonstrating

---

[48] *Id.*

that Shawe caused the Company or acted in concert with the Company to initiate or pursue the claims in the New York Action would implicate a question of fact for which there is no record.[49] For the reasons just discussed, Intervenors' reliance on paragraph 5(b) cannot support a finding of contempt.

## B. Jurisdictional Provisions in the Sale Order and Final Order

The Sale Order and the Final Order each contain provisions affording the Court of Chancery exclusive jurisdiction over certain matters. Specifically, paragraph 15 of the Sale Order states that:

> No party to the Actions, and no other person acting or purporting to act as a director, stockholder, officer, employee or agent of the Company shall institute or prosecute any actions or proceedings in any forum other than this Court challenging any action, recommendation or decision by the Custodian.[50]

Paragraph 10 of the Final Order states, in relevant part, that:

---

[49] Intervenors also contend that paragraph 5(b) "is even broader than the release" in paragraph 3(b) because "[n]ot only does the claim bar prevent the assertion against 'any [released party] [of] . . . the [released claims]' but it prohibits 'initiating or pursuing' 'any claim, action, suit or proceeding of any nature whatsoever . . . *relating* to the released Claims.'" Dkt. 1539 ¶ 54 (alterations in original). The court need not address this question because a predicate for invoking the bar order (*i.e.*, that a "Buyer Releasor" initiated, pursued, or caused or acted in concert to cause any other person to initiate or pursue, the claims in the New York Action) has not been established for the reasons explained above.

[50] Dkt. 848 ¶ 15.

> Without impacting the finality of this Order and judgment, the Court retains continuing and exclusive jurisdiction over the parties to the Actions for all matters relating to the Actions, including the administration, interpretation, effectuation or enforcement of the Sale Agreement and the Related Agreements, and all orders of the Court in Civil Action Nos. 9700-CB and 10449-CB . . . .[51]

In both the Sale Order and the Final Order, the term "Actions" refers to the actions captioned in those orders, *i.e.*, Civil Action Nos. 9700-CB and 10449-CB.

Respondents' primary defense against a finding of contempt with respect to either of the jurisdictional provisions is that "there is no way that the exclusivity provisions could be reasonably interpreted to apply to a claim that could not be filed in the Court of Chancery for want of jurisdiction."[52]   This argument is predicated on the Company's withdrawal of its equitable claim in the New York Action *after* the Motion was filed.  To be more specific, Respondents contend that, by amending its complaint in the New York Action—*in the face of a motion for contempt*—to include only a legal claim for damages against Intervenors, the Court of Chancery would lose the ability to enforce its own orders even if the filing of the New York Action (in its original form or as amended) violated the plain terms of the exclusive jurisdiction provision of those orders.

---

[51] Dkt. 1243 ¶ 10.

[52] Dkt. 1569 ¶ 51.

It is well-established that "the Court of Chancery has jurisdiction to enforce its own orders"[53] and it may well be appropriate to consolidate the mirror-image malpractice action TransPerfect filed against Intervenors in the Court of Chancery with this action to protect its authority to do so.[54]  That said, the jurisdictional questions underlying Respondents' argument involve unique issues of Delaware law and procedure[55] that have not been fully briefed on the instant Motion but that are the subject of a motion the Company filed in the Delaware Malpractice Action that is currently being briefed.[56]  Given these circumstances, the court assumes

---

[53] *In re TransPerfect Glob., Inc.*, 2019 WL 6130807, at *5 (Del. Ch. Nov. 18, 2019).

[54] *See* Ch. Ct. R. 42(a) ("When actions involving a common question of law or fact are pending before the Court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning the proceedings therein as may tend to avoid unnecessary costs or delay.").

[55] For example, TransPerfect notes that the New York Action requests a jury trial, which is unavailable in this court.  Dkt. 1569 ¶ 55.  Putting aside whether the Company would be entitled to a jury trial, this court can send discrete factual issues to the Superior Court for trial by jury.  *See* 10 *Del. C.* § 369 ("When matters of fact, proper to be tried by a jury, arise in any cause depending in Chancery, the Court of Chancery may order such facts to trial by issues at the Bar of the Superior Court.").  In such event, a member of the Court of Chancery could be designated to serve as a judge on the Superior Court.  *See* Del. Const. art. IV, § 13(2) (Authorizing the Chief Justice "to designate one or more of the State Judges (including the Justices of the Supreme Court) to sit in the Court of Chancery, the Superior Court, the Family Court or the Court of Common Pleas, as the case may be, and to hear and decide such causes in such Court and for such period of time as shall be designated").

[56] *See TransPerfect Glob., Inc. v. Ross, Aronstam & Moritz, LLP et al.*, C.A. No. 2021-0065-AGB, Dkts. 7, 9.

without deciding for purposes of this opinion that it would have subject matter jurisdiction over the claim asserted in the Delaware Malpractice Action—which mirrors the amended complaint in the New York Action—and turns next to address the parties' arguments based on the plain text of the jurisdictional provisions in the two orders at issue, beginning with the Sale Order.

Intervenors argue that TransPerfect violated the jurisdictional provision in paragraph 15 of the Sale Order because (i) TransPerfect, a party to the Actions, (ii) filed a lawsuit in another forum (iii) challenging actions and decisions the Custodian made concerning the Company's defense of the 211 and 220 Actions.[57] For the reasons discussed next, the court agrees that each of these three conditions has been satisfied and thus that the Company violated the plain terms of paragraph 15 of the Sale Order.

TPG and Shawe do not dispute the first two conditions. Nor could they. TransPerfect has been a party to the Actions since 2015 and separately represented since September 2019,[58] and it filed suit against Intervenors in another forum— New York state court. The only disputed issue is whether the New York Action challenges "any action, recommendation or decision by the Custodian." It does in

---

[57] Dkt. 1539 ¶¶ 57-61.

[58] *See* Dkt. 1339.

my view because the New York Action squarely puts at issue actions and decisions of the Custodian with respect to the defense of two actions Ms. Shawe filed at a critical point during the court-ordered sale process the Custodian was charged to oversee, *i.e.*, when the modified auction was underway following the Supreme Court's affirmance of the Sale Order.

To be more specific, the New York Action alleges that the Custodian was "a conflicted agent"[59] and that the Intervenors were "aiding and abetting"[60] him because they "recklessly or willfully followed" his "instructions, which were directly contrary to the interests of TransPerfect."[61] Given these allegations, the New York court would be unable in my opinion to adjudicate the Company's malpractice claim against Intervenors without making findings concerning the propriety of the Custodian's actions and decisions related to the Company's defense of the Section 211 and 220 Actions—actions and decisions over which this court has exclusive jurisdiction under the Sale Order.[62]

---

[59] Dkt. 1569 Ex. C ¶ 6.

[60] *Id.* ¶ 10.

[61] *Id.* ¶ 9.

[62] TPG and Shawe's one sentence response that the New York Action "challenges actions and decisions by Interveners, not the Custodian" (Dkt. 1569 ¶ 52) ignores the reality that the relief sought in the New York Action logically depends on demonstrating that the "instructions" of the Custodian that the Intervenors allegedly "followed" in a scheme to aid and abet the Custodian were improper. *See* Dkt. 1569 Ex. C ¶ 10.

For example, as discussed above, this court sided with the position RAM advocated on TPG's behalf and at the Custodian's direction in the Section 211 Action, finding that Ms. Shawe's highly conditional proposal to grant Elting a proxy to break the deadlocks was a transparent—and futile—attempt to interfere with the court-ordered sale process shortly after the Sale Order had been affirmed on appeal.[63] It is difficult to conceive how the New York court could adjudicate a malpractice claim against Intervenors with respect to their handling of the defense of the Section 211 Action without making findings concerning the Custodian's actions and decisions to oppose that action.

The Company's opposition to Ms. Shawe's inspection demand, which RAM implemented at the Custodian's direction, implicates similar considerations. In response to Ms. Shawe's initial inquiry for billing records, which was sent to the Custodian just three days after she received an adverse decision in the Section 211 Action, the Custodian expressed his concern that the Section 220 Action was another effort to "undermine the sale process":

---

[63] *See supra* Part I.B.

> Tellingly, your letter suggests that Ms. Shawe's inquiry is fueled by her disappointment at her recent failed attempt to stop the sales process, culminating in the failed mediation, and we can only surmise based on your reference to the Citizens group, that Ms. Shawe sees this inquiry into fees as a potential new avenue to try to undermine the sales process.[64]

Once again, it is difficult to conceive how the New York court could adjudicate a malpractice claim concerning Intervenors' handling of the defense of the Section 220 Action without making findings as to the basis for the Custodian decisions and actions with respect to that action.

In short, TransPerfect's theory of liability against Intervenors in the New York Action is inextricably intertwined with the actions and decisions of the Custodian whose instructions the Intervenors followed. As such, the conduct at issue in the New York Action falls within the plain terms of paragraph 15 of the Sale Order, which TransPerfect violated by filing the New York Action. This violation is meaningful because it directly implicates the Court of Chancery's authority to appoint and supervise custodians to address stockholder and board level deadlocks under Section 226 of the Delaware General Corporation Law.

Turning to the Final Order, Intervenors argue that the New York Action is a "matter[] relating to the Actions" and thus falls within the language of paragraph

---

[64] *Shawe v. TransPerfect Glob., Inc.*, C.A. No. 2017-0697-AGB, Dkt. 1 Ex. 6 at 2.

10 of the Final Order because "litigating TPG's claims requires examining the actions and motivations of the Custodian and the extent to which the Sale Order required RAM to follow the Custodian's directions."[65] This interpretation of the jurisdictional provision in the Final Order appears reasonable, but the court need not address it further because the jurisdictional provision in the Sale Order more clearly applies to the New York Action for the reasons just discussed. Put differently, if Intervenors would not be entitled to a finding of contempt under jurisdictional provision of the Sale Order, *a fortiori* they would not be entitled to such a finding under the jurisdictional provision in the Final Order.

Having determined that the filing of the New York Action violated the jurisdictional provision in the Sale Order in a meaningful way, the final question is whether the court should, in the exercise of its discretion, make a finding of contempt and order a sanction, as Intervenors request. Guided by the principles that the "purpose of a civil contempt determination is to coerce obedience to a court's order"[66] and that, "[e]ven where there has been a violation, the Court will consider good faith efforts to comply with the order or to remedy the consequences

---

[65] Dkt. 1539 ¶ 71.

[66] *Mother African Union*, 1992 WL 83518, at *6.

of non-compliance,"[67] the court concludes that a finding of contempt and the imposition of a sanction is not warranted, at least at this time.

Importantly, since the filing of the New York Action, TransPerfect (i) entered into a stipulation to stay that action and has not sought to lift the stay while the court decides the Motion[68] and (ii) filed the Delaware Malpractice Action, which may serve as the vehicle to adjudicate its claims against Intervenors in this forum. To be sure, TransPerfect took both actions using aggressive rhetoric and subject to qualifications and reservations of rights. Nonetheless, and giving the Company the benefit of the doubt, those actions reflect an effort to remedy the consequences of its non-compliance with the exclusive jurisdiction provision in the Sale Order and obviate the need for a finding of contempt and the imposition of any sanction.

---

[67] *In re TransPerfect Glob., Inc.*, 2019 WL 5260362, at *10 (Del. Ch. Oct. 17, 2019) (citing *Dickerson*, 1991 WL 208467, at *4).

[68] *See* Dkt. 1572.

## III. Conclusion

For the reasons explained above, the motion for contempt is **DENIED**. The parties are directed to confer and submit a schedule to complete briefing on the pending motions in the Delaware Malpractice Action and any other threshold issues relating thereto. **IT IS SO ORDERED.**

Sincerely,

*/s/ Andre G. Bouchard*

Chancellor

AGB/gm